UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sidney B. Brooks

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| DEVELOPING EQUITIES GROUP LLC | ) | 10-39617-SBB |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| Employer's Tax Identification | ) | |
| No. [if any]: EIN 84-1403314 | ) | |

**ORDER GRANTING SECOND STIPULATED MOTION TO VACATE AND RESET FINAL HEARING AND RESETTING ALL PENDING DEADLINES IN CONNECTION WITH THE FINAL HEARING**

THIS MATTER comes before the Court on the Debtor and creditor Stratus North Creek LLC's Second Stipulated Motion to (1) Vacate and Reset Final Hearing, and (2) Vacate and Reset All Pending Deadlines in Connection with the Final Hearing filed August 29, 2011 (Docket #157). The Court, having reviewed the pleading,

DOES ORDER that the Second Stipulated Motion is GRANTED.

IT IS FURTHER ORDERED that the Court's Order issued August 11, 2011 (Docket #140), including the hearing scheduled for October 5, 2011 at 9:00 a.m. in Courtroom C-402, as well as the deadlines contained therein, is hereby VACATED.

IT IS FURTHER ORDERED and notice is hereby given that a final evidentiary hearing regarding the following matters shall be held on **Wednesday, December 7, 2011, at 9:00 a.m. in Courtroom C-402,** Byron Rogers Federal Courthouse, 1929 Stout Street, Denver, CO:

    a.    Status North Creek, LLC's Motion for Relief from Automatic Stay (Docket #115) and the Debtor's Response thereto (Docket #119);

    b.    Debtor's Disclosure Statement (Docket #99) and the Objection of Stratus North Creek, LLC thereto (Docket #118); and

    c.    Debtor's Application to Employ Fuller Western Real Estate as Listing Agent/Broker for the Thornton Pads (Docket #74) and Stratus North Creek LLC's Objection thereto (Docket #82).

IT IS FURTHER ORDERED that with regard to the final hearing, the parties shall comply with the following procedures and deadlines:

1.    Any party intending to introduce any exhibits or call any witnesses at the scheduled hearing shall, on or before **December 1, 2011**, deliver to opposing counsel, a list and

photocopies of the proposed exhibits (pre-marked for identification) and a schedule of witnesses who may be called as well as a schedule of witnesses who will be called.

     2.     On or before **December 1, 2011**, each party shall submit to the Court, a tabbed and indexed binder which contains

         (a)     a complete copy of Status North Creek, LLC's Motion for Relief from Automatic Stay (Docket #115) and the Debtor's Response thereto (Docket #119); the Debtor's Disclosure Statement (Docket #99) and the Objection of Stratus North Creek, LLC thereto (Docket #109); and the Debtor's Application to Employ Fuller Western Real Estate as Listing Agent/Broker for the Thornton Pads (Docket #74) and Stratus North Creek LLC's Objection thereto (Docket #82), as filed by that party,

         (b)     a list of exhibits (Debtor shall use numbers to identify its exhibits; Stratus North Creek shall use letters) and schedule of witnesses who may or will be called, as submitted to counsel pursuant to paragraph one, above,

         (c)     a copy of each exhibit to be tendered for purposes of the final hearing, and

         (d)     copies of all sworn declarations of fact, marked as exhibits, as described hereinbelow.

The original exhibits and original sworn declarations of fact shall be tendered to the Court at the commencement of the hearing and shall not be submitted with this binder. The copy of exhibits shall be used by the Court and the original exhibits shall be used by the witness(es).

     3.     The parties shall jointly file with the Court, on or before **December 1, 2011**, a statement of stipulated facts.

IT IS FURTHER ORDERED that with regard to the final hearing, this hearing shall be governed by and evidence will be received through direct testimony by sworn declaration and the parties shall comply with the following procedures:

     1.     <u>Statement of Purpose</u>. The purpose of this particular procedure is to (a) streamline the presentation of direct testimony in trials and contested hearings, (b) allow adequate time and better preparation for cross-examination, and (c) facilitate pretrial disclosure. This is intended to reduce trial time without sacrificing due process and allow issues to be heard by the Court in a more timely manner.

     2.     <u>Procedure</u>. For each witness that an attorney calls on behalf of his client's case, the attorney shall prepare one original and one copy for the Court, and one copy for each party to the within action, of a succinct, but complete, written statement of the direct testimony which that witness would be prepared to give as though questions were propounded in the usual fashion. Each statement of fact shall be

separate, sequentially numbered and shall contain only facts which are relevant and material to the contested issue before the Court, avoiding redundancies, hearsay, and other obvious objectionable statements. The statement shall be signed under penalty of perjury by the declarant. A sample of such a statement is attached. Such statements may be referenced as the witnesses' "sworn declaration of fact."

Copies of all sworn declarations of fact shall be furnished to and received by the opposing counsel on or before **December 1, 2011**.

Sworn declarations of fact shall not be filed with the Court. The original of all sworn declarations of fact shall be marked as exhibits and tendered to the Court at the commencement of the trial or hearing, and copies of all sworn declarations of fact shall be marked as exhibits and submitted to the Court in a binder as identified hereinabove. If opposing counsel desires to object to any of the sworn statements or portions thereof, he/she may do so at the time the sworn declaration of each respective witness is offered to the Court. The witness shall then be sworn and asked if the statement correctly states his/her testimony if he/she were asked the appropriate question.

Assuming an affirmative answer, opposing counsel is then free to cross-examine the witness. At the conclusion of cross-examination, the party whose witness is on the stand may conduct oral redirect examination in the usual manner and opposing counsel may then conduct recross- examination. This procedure does not preclude legitimate rebuttal testimony in the usual manner.

Obviously, counsel will not be expected to submit a sworn declaration of fact for an adverse or hostile witness, or for legitimate rebuttal testimony, even though he/she calls that witness to testify.

Please draft these statements as succinctly as possible. Thank you.

DATED this October 4, 2011.

BY THE COURT

_Sid Brooks_

Sidney B. Brooks,
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case |
| JOHN (NMN) SMITH, | ) | No. _____ |
| SS#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, | ) | (Chapter __) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JOHN SMITH, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary Proceeding |
| RICHARD ROE, | ) | No._____ |
| Defendant. | ) | |

### DIRECT TESTIMONY OF JOHN SMITH

    1.    My name is John Smith and I am the Plaintiff in this action.

    2.    On February 1, 1983, Richard Roe and I entered into a written agreement bearing the same date and marked as Plaintiff's Exhibit 1.

    3.    At the time of signing the agreement, I gave the Defendant, Richard Roe, my personal check for $50,000.00, which he subsequently negotiated.

    4.    One week before we signed the contract, Mr. Roe showed me a special carburetor attachment which he claimed he had invented and had a patent therefor. At that time, Mr. Roe said to me that the attachment would reduce by 50% gasoline consumption of any engine to which it was attached.

    5.    At the same time, Mr. Roe said that he was negotiating with General Motors, who had offered $20,000,000.00 for an exclusive license to use and manufacture the patented device. However, Mr. Roe said he felt he was negotiating for a non-exclusive license so that the product could subsequently be licensed to Ford, Chrysler, and other automobile manufacturers.

    6.    Three months after the contract was signed, I still had not received assignment of one-half interest in the patent rights to the device and in fact Mr. Roe has stopped returning my calls; his phone was disconnected and he had moved out of the apartment where he had been residing.

    7.    I next saw Mr. Roe on August 31, 1983, at the United States District Court in Denver, Colorado, where he was being arraigned on charges of using the United States Mail to defraud. I spoke to him briefly at which time he admitted to me that the entire story about his inventing and patenting the carburetor device was false, including his purported negotiations with General Motors. He did, however, promise at the time that he would somehow or other pay back to me my $50,000.00, plus interest.

    Executed at Denver, Colorado, August 4, 1987. I declare under penalty of perjury that the foregoing is true and correct.

APPROVED AS TO FORM:                _____
_____                John Smith
_____
ATTORNEY FOR _____